# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No.: 1:21-cv-20939-KMM

MARTA G. VALIDO,

     Plaintiff,

v.

KILOLO KIJAKAZI,
Acting Commissioner of the
Social Security Administration,[1]

     Defendant.

_____/

## REPORT AND RECOMMENDATION

**THIS MATTER** is before the Court on Plaintiff Marta G. Valido's Motion for Summary Judgment (ECF No. 21) and Defendant Kilolo Kijakazi's, Commissioner of the Social Security Administration ("Commissioner"), Motion for Summary Judgment with Supporting Memorandum of Law and Response in Opposition to Plaintiff's Motion for Summary Judgment (ECF No. 22). Plaintiff filed a Response to Defendant's Motion for Summary Judgment (ECF No. 23), which also included a Reply to Defendant's Response to Plaintiff's Motion for Summary Judgment.[2] The undersigned has fully considered the Motions, Plaintiff's Response, the record, and is otherwise duly advised in the matter, and hereby recommends that Plaintiff's Motion for Summary Judgment be **DENIED**, and Defendant's Motion for Summary Judgment be **GRANTED**.

---

[1] Plaintiff initiated this suit against then Acting Commissioner Andrew Saul. Kilolo Kijakazi replaced Andrew Saul as the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Federal Rule of Civil Procedure 25(d), "[a]n action does not abate when a public officer who is a party in an official capacity . . . otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party. Later proceedings should be in the substituted party's name, but any misnomer not affecting the parties' substantial rights must be disregarded."

[2] The Honorable K. Michael Moore, United States District Judge, referred the Motions to the undersigned Magistrate Judge for a Report and Recommendation (ECF No. 11).

## I.      PROCEDURAL BACKGROUND

This case involves an application for Social Security disability insurance benefits under the Social Security Act (the "Act") (42 U.S.C. § 401, *et seq*).  On November 28, 2016, Plaintiff applied for Social Security disability insurance benefits and supplemental Social Security Income ("SSI") under Title II of the Act, alleging that she was unable to work due to schizophrenia, depression, bipolar disorder, insomnia, high blood pressure, tremors, a head injury, cervical pain, and injuries to her ankle and shoulder.  R. 240.[3]

Plaintiff alleges the disability onset date to be November 28, 2016.  R. 94, 111, 224. Plaintiff's claim was initially denied on May 31, 2017.  Plaintiff's request for reconsideration was denied on January 25, 2019.  Thereafter, Plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ").  A hearing took place by telephone on July 22, 2020, before ALJ Tracey Leibowitz.  The hearing participants included Plaintiff, Plaintiff's attorney, an interpreter, a hearing reporter, and Vocational Expert ("VE") Daniel L. Simone.  The ALJ ultimately denied Plaintiff's application for disability insurance benefits and supplemental SSI, issuing her findings on August 6, 2020.  R. 9, 23-24.  Plaintiff sought a review of the ALJ's decision by the Appeals Council.  On January 15, 2021, the Appeals Council denied Plaintiff's request for review.  Under 42 U.S.C. § 405(g), Plaintiff exhausted all forms of administrative review and filed the instant action before the Court on March 10, 2021, which is now ripe for review (ECF No. 1).

---

[3] Citations to the Certified Administrative Record (ECF No. 18) are indicated by "R" followed by the Commissioner's Bates numbering stamp (the bold font numbers located in the bottom right-hand corner of each page).

## II.    THE RECORD

### a.  Summary of Hearing Testimony

#### i.  Plaintiff's Testimony

Plaintiff was sixty-three years old at the time of the hearing.  R. 65.  Plaintiff completed basic education, which is the equivalent of high school, in Cuba.  *Id*.  She is an American citizen. R. 66.  She claimed to not drink alcohol, smoke, and has never used illegal drugs.  R. 72.

Plaintiff testified that she worked in gardening with a company named Aramark.  Plaintiff stated that she worked outside in the gardens, picked up garbage, and cut grass at Florida International University ("FIU").  R. 66.  She claims she experienced an accident that affected her physical well-being and caused her current medical problems.  *Id*.  Plaintiff alleged that while working for Aramark, she lifted between 20 to 55 pounds.  R. 67.

Plaintiff testified that she suffers from problems with her back and cervical spine, and that her biggest problem is her nerves.  R. 68.  She claimed to have a lack of balance and has undergone several therapies.  *Id*.  Plaintiff stated that she constantly takes over-the-counter anti-inflammatories for her pain and that she suffers from a lot of pain.  *Id*.  Plaintiff claims she has had extensive therapy to include heat and physical therapy.  *Id*.

Plaintiff also testified regarding her emotional problems.  Specifically, she stated that she hears voices that do not let her do the things she wants.  R. 69.  For her emotional problems, Plaintiff said she takes Risperdal, fluoxetine, and hydrochlorothiazide in the morning, and Risperdal, mirtazapine, duloxetine, and Benadryl in the afternoon.  *Id*.  These medications apparently help Plaintiff, but she also testified that they do not make her conditions go away.  *Id*. She stated that she is anxious, was having trouble holding the phone, and barely slept the night before the hearing.  *Id*.  Plaintiff described her emotional problems as being inconsistent, with them coming and going, and Plaintiff not knowing when they would affect her.  *Id*.  She stated that

her emotional problems are unpredictable and could affect her two days a week or two days a month, and was unable to provide a definitive answer as to how often these symptoms arise.  R. 70.  Plaintiff visits a psychiatrist every two months.  *Id*.

Plaintiff testified that her typical day includes taking her pills, drinking coffee, occasionally eating breakfast, and then laying back down until getting up for lunch.  *Id*.  She will then go back to sleep.  *Id*.  She takes a shower in the evening when her children arrive home from work, eats dinner at around 8:00 PM, and goes to sleep.  *Id*.  She complained of not having "normal sleep."  *Id*.  Plaintiff stated that she occasionally watches television while she is at home but mostly sits in her chair.  R. 71.  Plaintiff does not cook and stated that she sometimes helps with the laundry.  *Id*.  Finally, Plaintiff testified that she previously would go for walks but cannot any longer.  *Id*.

### ii.  Vocational Expert Testimony

At the hearing, the VE determined Plaintiff's past relevant work as a Landscape Laborer with heavy exertional capacity under the Dictionary of Occupational Titles ("DOT") as DOT code 408.687-014, with a specific vocational level ("SVP") of two.  During the hearing, the ALJ presented the VE with a hypothetical individual with similar limitations as Plaintiff and asked if the individual could perform Plaintiff's past relevant work.  The hypothetical individual was the same age as Plaintiff with the same educational background and past work experience, who occasionally climbs ramps and stairs, and can never climb ladders, ropes, or scaffolds.  Mentally, this individual could apply common sense, understanding, and carry out detailed but uninvolved written or oral instructions with the scope of reasoning level 2.  This individual occasionally interacted with supervisors, coworkers, and the general public.

The VE indicated that Plaintiff's past work would be unavailable to the individual based on the exertional level.  The VE stated that there would be other medium level jobs available to the hypothetical individual presented by the ALJ, including a Kitchen Helper, DOT code of

318.687-010, with approximately 275,000 positions in the national economy.  Furthermore, the VE indicated that there is the job of a Cook Helper, DOT code of 317.684-010, with approximately 250,000 jobs in the national economy.  The VE also mentioned the job of a Hospital Cleaner, DOT code of 323.687-010, with approximately 42,000 positions in the national economy.  Plaintiff's attorney asked the VE how the hypothetical individual's absence from work at least two days per month would affect the jobs the VE identified.  The VE characterized anything in excess of one absence per month as being prohibitive.[4]

### b.  Summary of Relevant Medical Evidence

#### i.  Gustavo Fonte, Ph.D.

Prior to the alleged onset date, on August 4, 2016, Dr. Fonte conducted a neuropsychological evaluation of Plaintiff.  R. 387–95.  Dr. Fonte opined that Plaintiff had cognitive impairments and deficits in working memory, her intellectual abilities fell in the borderline range, and she had deficits in executive functioning.  R. 391.  He explained that Plaintiff's cognitive functioning was simple-minded, indicated she did best with concrete concepts, and found that Plaintiff endorsed many symptoms of depression.  R. 392.  Plaintiff was diagnosed with schizoaffective disorder (bipolar type), borderline IQ, neurocognitive disorder, and anxiety. R. 393.

#### ii.  Vivian Gonzalez-Diaz, Ph. D.

Dr. Gonzalez-Diaz conducted a consultative examination of Plaintiff on April 17, 2017, and diagnosed Plaintiff as depressed with psychotic features.  R. 416–18.  Dr. Gonzalez-Diaz also indicated that Plaintiff was fully oriented, had a logical thought process, had a normal stream of

---

[4] Plaintiff's attorney and the VE also discussed whether the inability to communicate in English erodes the jobs identified by the VE.  R. 76.  The VE stated that most of the jobs do not require a great deal of communication in English and it is not required that an individual speak English.  *Id.*  The ALJ reminded Plaintiff's attorney that the inability to communicate in English had been removed from the grid rules.  *Id.*

thought, and was responsive to the interview.  R. 417.   Plaintiff was found to have low average intellectual functioning and a poor fund of information, and also reported hearing voices.  R. 417. Dr. Gonzalez-Diaz determined that Plaintiff's attention and concentration were adequate, and that Plaintiff could perform complex mental math.  R. 417-18.  Dr. Gonzalez-Diaz found Plaintiff's memory to be intact and that Plaintiff could remember past events, recall two out of three objects after a delay, and recall six digits.  R. 418.  While there are no treatment notes describing Plaintiff's physical condition during this period, Dr. Gonzalez-Diaz noted during the psychiatric evaluation that Plaintiff had a normal gait and erect posture.  R. 416.

### iii.  Hector Meruelo, M.D.

Plaintiff saw Dr. Meruelo for a consultative examination, on May 17, 2017, at the request of the Division of Disability Determinations.  R. 412.  Dr. Meruelo observed that Plaintiff's interactivity and behavior were abnormal, and he could not tell whether she was in touch with reality.  R. 423.  Plaintiff had 4+/5 strength in her upper and lower extremities.  R. 424.  He classified her as "basically a psychiatric case," and referred her to "Dr. Fujita" for psychiatric care. *Id*.  Dr. Meruelo could not determine Plaintiff's range of motion in her lower back because Plaintiff declined to even attempt to move for fear of the pain.  R. 425.  He also noted that Plaintiff walked without difficulty and had no limping or lumbar list and could tandem walk and walk on her heels and toes.  R. 422–23.  Plaintiff had full range of motion in her neck, normal spine anatomy, normal range of motion in all joints, no atrophy in any muscle group, and no motor or sensory deficits.  R. 424, 426–27.  Dr. Meruelo determined Plaintiff had no impairment of dexterity or ambulation, and no radiculopathy or neurological impairment of her extremities.  R. 424–25.

### iv.  Sandra Fujita, ARNP

Advanced  registered  nurse  practitioner  ("ARNP")  Fujita,  at  multiple  medication management appointments in 2017, found Plaintiff to be alert and oriented with a depressed and

anxious mood.  R. 507, 512.  Plaintiff's memory was occasionally impaired; however, Plaintiff's concentration, insight, and judgment were fair.  *Id.*  ARNP Fujita did not find that Plaintiff suffered from hallucinations or delusions.  *Id.*

Plaintiff experienced an increase in symptoms around December 2017 when she stopped taking her medication and received inpatient treatment.  R. 498, 503.  After Plaintiff resumed her medication, she showed clinical improvement.  R. 477, 487.  After being discharged Plaintiff continued to receive outpatient treatment between 2018 to 2020, and records indicated that she was alert and oriented with appropriate appearance, euthymic mood, intact memory, fair concentration, fair insight and judgment, intact thought process, no hallucinations, and unremarkable thought content.  R. 433, 438, 443, 448, 453, 461, 535–36, 540, 544, 551, 555, 559, 564, 569, 574.

### v.  John Catano, M.D.

Plaintiff saw Dr. Catano on November 10, 2018 for a consultative examination at the request of the Office of Disability Determinations.  R. 515.  Plaintiff complained of mild to moderate intermittent aching in her lower back that improved with over-the-counter medication and pain in her left shoulder.  R. 515.  Plaintiff had little difficulty getting in and out of a chair and on and off the examination table by herself, her ambulation was slow, but her gait was normal.  R. 516.  She had a range of motion in her lower back to 60 degrees of anterior flexion and had moderate tenderness or spasm in the paraspinal muscle of the lumbar spine.  R. 516-17.  An x-ray of Plaintiff's lower back showed mild degenerative changes.  R. 523.  Dr. Catano diagnosed Plaintiff with neck and lower back pain syndrome, most likely degenerative in nature, and a history of generalized anxiety disorder with psychotic features.  R. 516.

### vi.   State Agency Consultants

Multiple State agency consultants also reviewed the Record, including Maryann Wharry, Psy.D., Jennifer Meyer, Ph.D., and Cal VanderPlate, Ph.D.  Each of the State agency consultants determined that Plaintiff could manage simple instructions.  R. 90, 107, 530.  Dr. Wharry indicated that Plaintiff was moderately limited, would have reduced concentration, persistence, and pace for more versus less complex tasks, and would likely benefit from reduced social and adaptive demands.  R. 88–90.  Similarly, Dr. Meyer, who reviewed the Record in October 2018, found Plaintiff as fully capable of recalling simple work procedures and instructions, although she determined Plaintiff would likely have difficulty with detailed instructions, maintaining attention and concentration, and completing tasks at a consistent pace.  R. 107.  Dr. Meyer found Plaintiff could sustain the attention to complete simple, repetitive tasks, and appeared capable of working without excessive supervision or assistance but would have difficulty in a high-stress and fast-paced environment.  R. 107–08.  Finally, Dr. VanderPlate reviewed Plaintiff's mental residual functional capacity ("RFC") and likewise determined that Plaintiff could maintain her attention and concentration for two-hour periods, interact infrequently with the public, relate adequately with her coworkers and supervisors, and manage stress and normal changes.  R. 530.

### c.   Summary of the Administrative Law Judge's Decision

After reviewing the Record and conducting a hearing, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since November 28, 2016.  R. 17.  The ALJ found that Plaintiff has the following severe impairments: spine disorders, obesity, depressive, bipolar and related disorders, and neurodevelopmental disorders, but that Plaintiff does not have an impairment or combination of impairments that meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1.  *Id*.

With the RFC assessment, the ALJ found that Plaintiff has the RFC to:

> [P]erform medium work … except the claimant can occasionally climb ramps and stairs. She can never climb ladders, ropes or scaffolds. The claimant can apply commonsense understanding to carry out detailed but uninvolved written or oral instructions, within the scope of reasoning level 2. She can occasionally interact with supervisors, coworkers, and the general public."

R. 19. The ALJ found that Plaintiff is unable to perform any past relevant work, R. 22, and that there are jobs existing in significant numbers in the national economy which Plaintiff could perform, including Kitchen Helper, DOT #318.687- 010, SVP level of 2, which is medium in exertion and includes 275,000 jobs in the national economy; Cook Helper, DOT #317.684-010, SVP 2, which is medium in exertion and includes 250,000 jobs in the national economy; and Hospital Cleaner, DOT #323.687-010, SVP 2, which is medium in exertion and includes 42,000 jobs in the national economy. As such, the ALJ found that Plaintiff is not disabled within the meaning of the Social Security Act. R. 23.

## III.    STANDARD OF REVIEW

### a.  Legal Principles

After an ALJ issues a decision and the claimant exhausts all tools of administrative review, the claimant may seek review of the decision by commencing a civil action in federal court. The court is tasked with only deciding whether the ALJ's decision was supported by substantial evidence and whether the ALJ applied the correct legal standards. *See* 42 U.S.C. § 405(g); *Davis v. Kijakazi*, 2022 WL 1215634, at *1 (N.D. Ala. Apr. 25, 2022) (citing *Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1323 (11th Cir. 2020)).

### b.  Regulatory Framework

The Social Security Administration formulated a framework of detailed regulations that are used in the SSA's review process. This framework begins by determining whether a claimant is disabled. A claimant must be "disabled" to be eligible for Social Security benefits. 42 U.S.C. § 1382. The claimant must prove he or she is disabled within the meaning of 42 U.S.C. §

9

423(d)(1)(A).  The Act defines a disability as the "inability to engage in any substantial activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

The Code of Federal Regulations outlines a five-step sequential evaluation process for deciding whether a claimant is disabled.  In the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(i).  If a claimant is engaged in any substantial gainful activity, she will be found not disabled.

In the second step, the ALJ must then determine whether she has a severe impairment or a combination of impairments.  20 C.F.R. §§ 404.1520(a)(4)(ii).  If the claimant's impairment or combination of impairments does not significantly limit her physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe, and the claimant will not be found disabled.  20 C.F.R. § 1520(c).  If the claimant does have a severe impairment or combination of impairments, the ALJ goes on to step three.  *Mabry v. Saul*, 2020 WL 4428749, at *2 (N.D. Ala. July 31, 2020).

In the third step, the ALJ must determine whether the impairment meets or equals the severity of a specified impairment in the Listing of Impairments.  20 C.F.R. Pt. 404, Subpt. P. App. 1.  Step four consists of a two-prong analysis, in which the ALJ assesses the following: (1) the claimant's residual functional capacity and (2) the claimant's ability to perform her past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  At this step, the ALJ will consider the claimant's RFC and compare it with the physical and mental demands of her past relevant work.

10

20 C.F.R. §§ 1520(a)(4)(iv), 1520(f).  If the claimant cannot prove that her impairment meets or equals one of the impairments listed in Appendix 1, she must prove that her impairment prevents her from performing his past relevant work.   If the claimant can still perform her past relevant work, then she will not be found disabled.  *Id.*

In step five, the burden shifts to the SSA to show the existence of other jobs in the national economy that the claimant can perform.  *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018).  If met, the "burden shifts back to the claimant to prove she is unable to perform the jobs suggested by the [SSA]."  *Id.*  The ALJ considers the claimant's RFC, age, education, and work experience in determining whether the claimant is capable of adjusting to other work.  If the claimant can make an adjustment to other work that exists in the national economy, then she is not disabled.  If not, the claimant is considered disabled.  20 C.F.R. §§ 404.1520(g), 416.920(g).  In determining whether the Commissioner has met this burden, the ALJ must develop a full and fair record regarding the vocational opportunities available to the claimant.  *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989).

## IV.    ANALYSIS

Plaintiff moves to reverse and remand this case for an award of disability benefits, and alternatively moves to remand this case an ALJ with what she alleges is the constitutional authority to hear the case, to properly consider the opinions of State agency doctors and include the limitations identified by these doctors in the RFC and hypothetical question to the VE, properly consider Plaintiff's limitations in stooping, and issue a new decision based on substantial evidence and proper legal standards.

### a.   Violation of the Separations of Powers Clause

Plaintiff cites to *Seila Law LLC v. CFPB*, 140 S. Ct. 2183 (Jun. 20, 2020), where the Supreme Court held that it is unconstitutional for an executive agency to be led by a single head

who serves for a longer term than the President and can only be removed from his position for cause. Plaintiff essentially argues that the SSA's alleged unconstitutional removal provision voids the ALJ's decision.

In opposition, Defendant argues that under *Collins v. Yellin*, 141 S. Ct. 1761 (2021), Plaintiff cannot show the required nexus between Section 902(a)(3)'s removal restriction and the denial of her benefits claim. Additionally, Defendant contends that Plaintiff's rehearing request should be denied under the doctrines of harmless error, de facto officer, the rule of necessity, and broad prudential considerations.

In *Collins*, the Supreme Court considered a similar challenge to a provision restricting the removal of the director of the Federal Housing Finance Agency ("FHFA") that prevented the President from removing the agency's director without cause. However, to obtain retrospective relief, the Supreme Court held that a plaintiff must show that "an unconstitutional provision . . . inflict[ed] compensable harm." *Collins*, 141 S. Ct. at 1788–89, 1788 n.24

In *Vickery v. Commissioner of Social Security,* the plaintiff alleged that she did not receive a constitutionally valid hearing, adjudication, and decision because the ALJ who rendered her decision did not have a proper delegation of power because the Commissioner's statutory tenure protection violated separation of powers principles. No. 5:21-cv-122-PRL, 2022 WL 252464, at *3 (M.D. Fla. Jan. 27, 2022). The court dismissed the plaintiff's constitutional claim on the grounds that the plaintiff's purported injuries were conclusory; the plaintiff set forth no facts showing plausible harm as a result of the Commissioner's statutory protections; and, thus, the plaintiff could not demonstrate that the provision itself "inflict[ed] compensable harm." *Id.*

Similarly, here, the undersigned finds that Plaintiff has not identified how the removal provision at issue caused her compensable harm. Plaintiff has not set forth anything other than conclusory allegations to show any connection between the removal provision and any possible

harm to Plaintiff.  Further straining the nexus between the removal provision and any cognizable harm to Plaintiff is the fact that the ALJ who rendered the decision held office under an appointment legally ratified by then-Acting Commissioner Berryhill, who was not subject to the removal provision's protection.  *See Helms v. Comm'r of Soc. Sec.*, No. 3:20-CV-589-MOC, 2021 WL 5710096, at * 3 (W.D.N.C. Dec. 1, 2021) (holding that even if the plaintiff were somehow injured by the ALJ's decision, the ratification of the ALJ's appointment by Acting Commissioner Berryhill "adequately cured any such injury," since the Acting Commissioner was not protected from removal from office).

Although the Supreme Court in *Collins* did not directly address the issue raised herein, Justice Kagan foreshadowed its outcome:

> [T]he majority's approach should help protect agency decisions that would never have risen to the President's notice.  Consider the hundreds of thousands of decisions that the [SSA] makes each year.  The SSA has a single head with for-cause removal protection; so a betting person might wager that the agency's removal provision is next on the chopping block ... [b]ut given the majority's remedial analysis, I doubt the mass of SSA decisions—which would not concern the President at all—would need to be undone.  That makes sense....  When an agency decision would not capture a President's attention, his removal authority could not make a difference—and so no injunction should issue.

*Collins*, 141 S. Ct. at 1802 (Kagan, J., concurring).  Justice Kagan's reasoning supports the conclusion that there is no evidence in the instant action to support a nexus between the removal provision and any compensable harm to Plaintiff.  *Id.*; *see also Tibettes v. Comm'r of Soc. Sec.*, No. 2:20-cv-872-SPC-MRM, 2021 WL 6297530, at *3 (M.D. Fla. Dec. 21, 2021); *Vickery*, 2022 WL 252464, at *4; *Helms,* 2021 WL 5710096, at * 3.

Plaintiff has not asserted any clear allegations that the Acting Commissioner's unconstitutional tenure resulted in harm to her.  The ALJ's decision here was based upon the factual record and the application of established law, which generally cannot be changed by the Commissioner.  Plaintiff, like the other plaintiffs in the cited cases, has neither shown a nexus

between the removal restrictions and her claim, nor has she plausibly alleged that the statutory tenure protection affected the ALJ's decision or caused her harm.

Defendant also argues that Plaintiff is not entitled to relief due to multiple other legal doctrines such as harmless error, de facto officer, the rule of necessity, and broad prudential considerations. Because Plaintiff cannot show a connection between the Acting Commissioner's tenure protection and the ALJ's denial of her disability benefits claim, she cannot demonstrate that there was harmful error.

Plaintiff cannot succeed on her de facto officer doctrine challenge either.[5] This doctrine "springs from the fear of the chaos that would result from multiple and repetitious suits challenging every action taken by every official whose claim to office could be open to question, and seeks to protect the public by insuring the orderly functioning of the government despite technical defects in title to office." *Ryder*, 515 U.S. at 180. In *Ryder*, the Supreme Court found that relief is available for someone "who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates [her] case." *Id*. at 182–83. As discussed above, the Commissioner had a proper appointment, thus Plaintiff is not eligible for relief under the de facto officer doctrine either.

Plaintiff is also ineligible for relief under the rule of necessity. The rule of necessity provides that a judge is duty bound to perform his or her jurisdictional authority even in the face of a statutory disqualification if recusal would result in the lack of a forum in which the issue can be adjudicated. *In re Wireless Tel. Radio Frequency Emissions Prod. Liab. Litig.*, 170 F. Supp.

---

[5] The de facto officer doctrine confers validity upon acts performed by a person acting under the color of official title even though it is later discovered that the legality of that person's appointment or election to office is deficient. *Ryder v. United States*, 515 U.S. 177, 180 (1995) (citing *Norton v. Shelby County,* 118 U.S. 425, 440 (1886)).

2d 1356 (J.P.M.L. 2001). Plaintiff essentially argues that the Commissioner's tenure protection filtered down to one ALJ within SSA. Should this be the case, then the Commissioner's tenure protection would affect all ALJs and Plaintiff would not have a forum to bring her claim. This is impractical and in direct contradiction with the rule of necessity.

Likewise, from a broad prudential perspective, Plaintiff's request is untenable as it would lead to countless numbers of rehearings for other disability claimants who also did not suffer any harm from the removal restriction. Like Justice Kagan explained, the majority's decision, with its emphasis on a showing of harm, correctly prevents the "mass" of SSA decisions from being "undone." *Collins*, 141 S. Ct. 1802 (Kagan, J., concurring).

Accordingly, the undersigned recommends that Plaintiff's Motion for Summary Judgment be denied, and Defendant's Motion for Summary Judgment be granted, based on Plaintiff's constitutional challenge.

**b. ALJ's Evaluation of the Prior Administrative Medical Findings**

Plaintiff argues that the ALJ failed to sufficiently explain why she excluded some of Plaintiff's impairments from the RFC assessment and the hypothetical question posed to the VE. Plaintiff alternatively argues that because the ALJ limited Plaintiff to performing simple tasks, the ALJ may have considered Plaintiff's inability to carry out detailed instructions, but the RFC finding is nonetheless erroneous because the recommended jobs require carrying out detailed instructions.

Defendant argues that for Social Security disability claims filed on or after March 27, 2017, pursuant to 20 C.F.R. § 416.920c(b)(1), ALJs need not articulate how they considered the persuasiveness of each prior administrative finding (i.e., evidence from State agency medical and psychological consultants). Furthermore, even if an ALJ finds a prior administrative finding

persuasive, Defendant argues that the ALJ need not "adopt every part of a prior administrative medical finding . . . into the RFC." (ECF No. 22 at 21).

In Response, Plaintiff takes particular issue with the ALJ's statement that "[t]he opinions of the State agency reviewers are persuasive as they are consistent with and supported by the overall evidence of record." R. 22. Plaintiff insists that the ALJ must have applied 20 C.F.R. § 416.920c, the new regulation, and did not analyze Plaintiff's ability to carry out detailed but uninvolved instructions and interact with others in her decision. R. 22, 89, 107. Plaintiff refers to the various facts Defendant presents to demonstrate Plaintiff's sufficient mental functioning as a "*post hoc* rationalization" (ECF No. 23 at 2-3). *See Baker v. Comm'r of Soc. Sec.*, 348 Fed. App'x 893, 896 (11th Cir. June 23, 2010) ("a court may not accept appellate counsel's *post hoc* rationalizations for agency actions" and "[i]f an action is to be upheld, it must be upheld on the same bases articulated in the agency's order.") (citing *FPC v. Texaco Inc.*, 417 U.S. 380, 397 (1974)).

In 2017, the SSA revised its medical evidence rules. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017). The revisions include redefining terms related to evidence; revising how the agency considers medical opinions and prior administrative medical findings; and revising rules about treating sources, acceptable medical sources, and medical and psychological consultants. *Id.* The final rules became effective on March 27, 2017. *Id.*

In evaluating claims filed on March 27, 2017, or later, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 416.920c(a); *see Matos v. Comm'r of Soc. Sec.*, No. 21-11764, 2022 WL 97144, at *4 (11th Cir. Jan. 10, 2022) ("This new regulatory scheme no longer requires the ALJ to either assign

more weight to medical opinions from a claimant's treating source or explain why good cause exists to disregard the treating source's opinion."). The new regulations no longer use the term "treating source," and instead use the phrase "your medical source(s)" to refer to whichever medical source a claimant chooses to use.

However, the Record indicates—and Defendant even states—that on December 6, 2016, Plaintiff filed a claim for supplemental SSI and alleged disability since November 28, 2016.  R. 94, 111, 224.  Nevertheless, Defendant contends that the ALJ must operate under the new regulatory rules applicable to claims filed on or after March 27, 2017.  This is inaccurate but not fatal to Defendant's Motion.

The regulations prior to March 2017, which apply here, indicate that the ALJ assesses the RFC "based on all of the relevant medical and other evidence."  *See* 20 C.F.R. §§ 416.945(a)(3), 416.946(c).  There is no indication that the ALJ did not analyze Plaintiff's ability to carry out detailed but uninvolved instructions and interact with others occasionally.  The ALJ considered the Record as a whole and afforded medical evidence weight accordingly.  Thus, the only issue is whether substantial evidence supports the RFC finding.

At step four, the ALJ limited Plaintiff to performing simple tasks, considered Plaintiff's ability to carry out detailed instructions, and correctly found that the recommended jobs required carrying out detailed instructions.  The Eleventh Circuit follows the interpretation of "detailed" found in *Lawrence v. Saul*, 941 F.3d 140,143–44 (4th Cir. 2019), and *Moore v. Astrue*, 623 F.3d 599, 623 (8th Cir. 2010), where the Fourth and Eighth Circuits reasoned that "detailed" indicates length rather than complexity, and "uninvolved" denotes a lack of complexity.  *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1323 (11th Cir. 2021).  The RFC finding limited Plaintiff to reasoning level 2 jobs, which includes "detailed but uninvolved instructions" and "problems involving few concrete variables."  DOT, App. C, 1991 WL 688702.  Simple, routine, and

17

repetitive work is consistent with reasoning level 2.  *See Valdez v. Comm'r of Soc. Sec.*, 808 F. App'x 1005, 1009 (11th Cir. 2020).

Evaluations from the State agency consultants, Dr. Wharry, Dr. Meyer, and Dr. VanderPlate, support the RFC limitation to reasoning level 2 work, as each physician explained that Plaintiff can manage simple instructions and perform simple tasks.  R. 90, 107, 530. Regarding social interactions, the observations of the State agency consultants also support the ALJ's decision to limit Plaintiff to no more than occasional interaction with others.  R. 90, 107–08, 530.  As such, substantial evidence supports the ALJ's limitation to detailed but uninvolved written or oral instructions, within the scope of reasoning level 2, and occasional interaction with supervisors, coworkers, and the general public.  *See* 20 C.F.R. § 416.920b(b)(1).

### c.   ALJ's RFC Finding

Plaintiff also alleges that substantial evidence does not support the ALJ's RFC finding because the ALJ failed to impose stooping limitations in the RFC assessment and in the hypothetical question to the VE.  Plaintiff contends that substantial evidence in the Record indicates that Plaintiff cannot stoop even to her waist level.  Defendant avers that substantial evidence supports the ALJ's findings.

There is no "rigid requirement" that the ALJ specifically refer to every piece of evidence as long as the decision allows the court to conclude that the ALJ considered the medical condition as a whole.  *Hennes v. Comm'r of Soc. Sec. Admin.,* 130 Fed. App'x. 343, 348 n. 11 (11th Cir. 2005) (*citing Dyer v. Barnhart,* 395 F.3d 1206, 12011 (11th Cir. 2005).  Here, although the ALJ did not specifically refer to the nonexertional activity of occasional stooping, the ALJ properly took into account Plaintiff's significant limitations, including the nonexertional limitations, in

creating Plaintiff's RFC.[6]  Any failure by the ALJ to impose the limitation of occasional stooping within the Plaintiff's RFC was harmless error.  *See Young v. Astrue*, No. 11-23587-CIV, 2012 WL 3962399, at *8 (S.D. Fla. Sept. 10, 2012) (citing *Diorio v. Heckler,* 721 F.2d 726, 728 (11th Cir. 1983) (finding the absence of the nonexertional limitation of occasional stooping as harmless error because the plaintiff was ultimately found capable of performing the same jobs).

Plaintiff glosses over the significant and environmental limitations that the ALJ did include in her assessment.  Specifically, the ALJ found Plaintiff had the RFC to perform medium work, except Plaintiff could only occasionally climb ramps and stairs.  R. 19.  The ALJ noted that Plaintiff can never climb ladders, ropes, or scaffolds.  *Id.*  The objective medical evidence, doctors' assessments, and other evidence provide a reasonable basis for the overall conclusion drawn by the ALJ.

Regarding the lack of inclusion of a stooping limitation, specifically, Dr. Catano, during Plaintiff's 2018 consultative examination, indicated Plaintiff had a normal gait, negative straight leg raise testing, could get in and out of a chair and on and off an examination table, and could tandem walk.  R. 516-20.  Similarly, in 2017, Dr. Meruelo noted that Plaintiff walked without difficulty, could get in and out of a chair and on and off an examination table without difficulty, could tandem walk and walk on her heels and toes, had no atrophy in any muscle group, and had no motor or sensory deficits.  R. 422–24.[7]

---

[6] Limitations or restrictions which affect a claimant's ability to meet the demands of jobs, other than strength demands, are considered nonexertional limitations. 20 C.F.R. § 416.969a(a).  Examples of nonexertional limitations includes difficulty functioning due to nervousness, anxiety, or depression or difficulty performing manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, crouching. *See id.* at § 416.969a(c)(vi).

[7] Plaintiff highlights her refusal to flex her back during the 2017 consultative examination as proof that she was not able to stoop. R. 425.  However, Plaintiff's refusal to flex her back was based on a subjective complaint that it would cause her pain and ultimately resulted in the testing physician being unable to completely assess her abilities.

In her Response, Plaintiff argues that the opinions of non-examining medical consultants, standing alone, cannot constitute substantial evidence to support the ALJ's decision and cites to *Putman v. SSA, Comm'r*, 705 F. App'x 929, 932 (11th Cir. 2017) (citations and internal quotations omitted).  The court in *Putnam* ultimately found that the opinion of the non-examining doctor  was not given undue weight.  *See id.* at 934 ("Moreover, even if the non-examining doctor did not review all of Putman's medical records before making his RFC determination, he cited portions of the record in support of his conclusions, and the ALJ, who made the ultimate determination, had access to the entire record as well as Putman's testimony. . . Having reviewed the records on which Putman relies, we cannot say that the ALJ's assessment was unreasonable.").  The non-examining medical consultants' opinions here do not stand alone but supplement the other evidence in the Record.  Non-examining medical consultants reviewed the Record and found Plaintiff was still capable of medium exertional work with no postural limitations.  R. 87, 105-06, 527.  Dr. Junejo, for instance, determined Plaintiff had a normal gait, and described this as "basically a psychiatric case."  R. 106.  Dr. Junejo also indicated Plaintiff had no impairment of dexterity or of ambulatory capacity.  Plaintiff failed to point to any evidence that, when considered alongside the evidence before the ALJ, would alter the RFC result.  Accordingly, the undersigned recommends that the ALJ's RFC determination be affirmed.

## V.    RECOMMENDATION

The undersigned respectfully recommends that Plaintiff's Motion for Summary Judgment be **DENIED** and that Defendant's Motion for Summary Judgment be **GRANTED**.

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable K. Michael Moore, United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation.  Failure to timely file objections will bar a *de novo* determination by the District

Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**RESPECTFULLY SUBMITTED** in Chambers at Miami, Florida, this 10th day of August, 2022.

_____

LAUREN F. LOUIS
**UNITED STATES MAGISTRATE JUDGE**